UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTONIO MEDINA PUERTA,<br>        Petitioner,<br>    v.<br><br>UNITED STATES OF AMERICA,<br>        Respondent, | )<br>)<br>)  Cr. No. 91-10258-MLW<br>)  Civ No. 22-11065-MLW<br>)<br>)<br>) |

MEMORANDUM AND ORDER

WOLF, D.J.                                              September 5, 2025

Petitioner Antonio Medina Puerta ("Puerta") has filed a self-prepared petition for writ of error coram nobis (the "Petition") challenging his 1993 criminal conviction for bank fraud. Dkt. No. 209. Mr. Puerta alleges that the Supreme Court's 2016 decision in Shaw v. United States, 137 S. Ct. 462 (2016) and the First Circuit's decision in United States v. Berroa, 856 F.3d 141 (1st Cir. 2017), render his conviction invalid. Id. This is Mr. Puerta's third coram nobis petition. For the reasons stated in the government's opposition and as amplified below, the Petition is being denied.

I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In November 1986, Mr. Puerta, then a research associate at a Boston non-profit research organization and originally from Spain, deposited a check in his account in the branch of the Bank of Boston, where he did his banking. See United States v. Puerta, 38 F.3d 34,

36-37 (1st Cir. 1994). The check was a bank check prepared by the Banco Central of Spain, dated October 30, 1986. The written amount on the check, translated into English, was "three hundred and sixty-five dollars," and the numeric representation on the check was "USD 365,000." Id. When he went to deposit the check at the Bank of Boston on November 3, 1986, Mr. Puerta stated on the deposit slip that the check was for $365,000. Id. at 37. On November 5, 2016, he returned to the bank to request that $350,000 be wired from his account to an account in England. Id. The bank representative informed Mr. Puerta that she first needed to verify that the check had been collected. Id. The following day the representative told Mr. Puerta that the check had been returned and the credit deleted from his account. Id. On that day, Banco Central informed the Bank of Boston that the check was meant to be for $365. Id.

On November 7, 1986, Mr. Puerta redeposited the signed check with a deposit slip stating that it was in the amount of $365,000. Id. He received a credit in his account for $365,000. Mr. Puerta's account otherwise had a balance of about $3,000. Id.

On November 12, 1986, Mr. Puerta returned to the bank and signed a wire transfer order directing the bank to transfer $350,000 from his account to an account in his name at Lloyd's Bank in England. Id. Later that day, the funds were wired to England. Id. The error was discovered about two weeks later. Id.

2

On September 5, 1991, a grand jury indicted Mr. Puerta on one count of bank fraud in violation of 18 U.S.C. §1344, and one count of foreign transportation of stolen money in violation of 18 U.S.C. §2314. See Indictment, Dkt. No. 1. At his trial, Mr. Puerta contended that the deposit of $365,000, rather than $365, was the result of an innocent misunderstanding regarding the amount stated on the check, which he believed was payment in connection with a research grant. Id. The jury was not persuaded. Id.

After a nine-day trial in which Judge Robert Keeton presided, a jury convicted Mr. Puerta of both bank fraud and foreign transportation of stolen money. See Jury Verdict, Dkt. No. 107.[1] On September 30, 1993, the court sentenced Mr. Puerta to concurrent eighteen-month terms of imprisonment. See Judgment, Dkt. No. 152.

Mr. Puerta appealed claiming, among other things, that the Bank of Boston was not defrauded because Banco Central had informed it prior to the November 7, 1986 deposit that the check was, in fact, for $365. Id. at 41. The First Circuit affirmed Mr. Puerta's

---

[1] Section 1344 contains two separate subsections, each of which constitutes an independent crime. See 18 U.S.C. §§1344(1) and (2). The First Circuit stated that in this case, "the jury either had to believe that [Mr. Puerta] violated both [the fraud and misrepresentation branches of §1344] or neither." Puerta, 38 F.3d at 41.

3

conviction. See United States v. Puerta, 38 F.3d 34, 36 (1st Cir. 1994).

Following his unsuccessful appeal, Mr. Puerta filed a series of post-conviction motions that were denied. See Cr. No. 91-10258 (Docket Nos. 172, 176-77, 184, 193-95, 199, 200-01, 203-07); United States v. Medina, Nos. 95-1381, 95-1941 (1st Cir. June 5, 1996) (unpub'd) (per curiam).

On July 25, 2011, Mr. Puerta filed his first petition for writ of error coram nobis, contending that the Supreme Court's decision in Neder v. United States, 527 U.S. 1 (1999), which held that materiality is an element of bank fraud, invalidated his bank fraud conviction. See Petition, 11-cv-11323-RGS, Dkt. No. 1. On July 25, 2011, Judge Richard Stearns dismissed this petition, finding that the rule in Neder was not retroactive. See id. at Dkt. No. 11. The First Circuit affirmed, stating "After reviewing the record in this case, we do not find that granting of the writ would be in the interest of justice." Puerta v. United States, No. 13-1261 (1st Cir. Feb. 21, 2013).

On December 24, 2015, Mr. Puerta filed a second petition for writ of error coram nobis, contending that under the Supreme Court's decision in Loughrin v. United States, 573 U.S. 351, 362-63 2014), his indictment failed to allege the crime of bank fraud under 18 U.S.C. § 1344. See Dkt. No. 208; see also Petition, 15-cv-14257-MLW,

4

Dkt. No. 1. Loughrin, 134 S. Ct. at 362-63, held that bank fraud requires a material falsehood and a relational connection between the alleged false statements or misrepresentations and the bank's property loss. On September 10, 2019, the court denied Mr. Puerta's second petition, finding that Mr. Puerta's "misrepresentations constituted the 'mechanism' that 'naturally induced' the Bank of Boston to part with its money." See United States v. Medina Puerta, No. 15-CV-14257-MLW, 2019 WL 11639554, at *5 (D. Mass. Sept. 10, 2019), aff'd, No. 19-2179, 2020 WL 11420698 (1st Cir. Dec. 9, 2020), cert. denied.

On June 14, 2022, Mr. Puerta filed a third petition for writ of coram nobis, the instant Petition, which challenges his conviction under the Supreme Court's 2016 decision in Shaw and the First Circuit's 2017 decision in Berroa. Mr. Puerta requested appointment of counsel in his Petition. Id. at 20. On September 13, 2022, the court denied his request for counsel "without prejudice to renewal after the respondent has filed a response to the petition, upon a duly-filed motion." Dkt. No. 212. On October 5, 2022, the government filed its response. Opposition, Dkt. No. 213. In his Reply, Mr. Puerta renewed his request for appointment of counsel stating only that he is indigent and unable to pay an attorney to represent him in this case. Reply, Dkt. No. 216, at 4.

5

II.   LEGAL STANDARD

A court considering a <u>coram nobis</u> petition presumes that the original proceedings were valid. <u>See</u> <u>United States v. Morgan</u>, 346 U.S. 502, 512 (1954). The burden to prove otherwise is on the petitioner and is a heavy one. <u>Id</u>. In the First Circuit, for a <u>coram nobis</u> petitioner to succeed, he must "explain[ ] his failure to seek relief from judgment earlier, show that he continues to suffer significant collateral consequences from the judgment, and demonstrate that the judgment resulted from an error of the most fundamental character." <u>Woodward v. United States</u>, 905 F.3d 40, 43 (1st Cir. 2018) (quoting <u>United States v. George</u>, 676 F.3d 249, 254 (1st Cir. 2012)); <u>see also</u> <u>Hager v. United States</u>, 993 F.2d 4, 5 (1st Cir. 1993); <u>United States v. Morgan</u>, 346 U.S. 502, 512 (1954).

With respect to the third criterion, the Supreme Court has elaborated that "fundamental errors" are those that "rendered the proceeding itself irregular and invalid." <u>Morgan</u>, 346 U.S. at 509. The First Circuit has indicated that what constitutes a "fundamental error" is not clearly defined, but the standard is a stringent one. <u>See</u> <u>George</u>, 676 F.3d at 258. Indeed, the remedy of <u>coram nobis</u> "lies at the far end of [the] continuum" of remedies, encompassing "stiffer" requirements than do successive 28 U.S.C. § 2255 motions. <u>Id</u>.

6

The First Circuit has noted that:

> [T]he tripartite test should not be administered mechanically but, rather, in a flexible, common-sense manner. Even if the test is satisfied, the court retains discretion over the ultimate decision to grant or deny the writ. In other words, passing the tripartite test is a necessary, but not a sufficient, condition for the issuance of the writ.

Id. at 255. "When all is said and done, issuing or denying a writ of error coram nobis must hinge on what is most compatible with the interests of justice." Id. at 258; see also Morgan, 346 U.S. at 511.

In addition, because Mr. Puerta filed the Petition pro se, the Petition must be "liberally construed . . . [and] held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

III. DISCUSSION

Even assuming without deciding that Mr. Puerta suffers the type of collateral consequences that could be expected to follow a federal fraud conviction, Mr. Puerta does not meet the other requirements for this court to exercise its discretion to provide coram nobis relief. Mr. Puerta has not adequately explained his delay in filing the instant Petition. Indeed, the thrust of his current Petition is the same as his previous petitions. Nor has Mr. Puerta demonstrated any fundamental error under the new caselaw on which he now relies. Mr. Puerta's central contention is that the Supreme Court's 2016

7

decision in Shaw rendered his conviction invalid. Even assuming without deciding that Shaw applies retroactively to Mr. Puerta's case, this contention is not correct for the reasons discussed below. Therefore, Mr. Puerta has failed to establish any error, much less the requisite "fundamental error." Thus, Mr. Puerta has not established that relief is in the interests of justice.

In Shaw, the Supreme Court held that the underlying scheme in a violation of 18 U.S.C. §1344(1) "must be one to deceive the bank and deprive it of something of value." Shaw, 137 S. Ct. at 469 (emphasis in original). However, the defendant in Shaw was convicted after the jury was instructed that "'scheme to defraud' means any deliberate plan of action or course of conduct by which someone intends to deceive, cheat, or deprive a financial institution of something of value." Id. at 469 (emphasis in original). Because the jury instructions contained the disjunctive "or," instead of the conjunctive "and," the Supreme Court remanded the case to the Ninth Circuit to determine "whether the instruction [was] lawful, and, if not, whether any error was harmless." Id. at 470.

Mr. Puerta claims the jury instructions given at his trial were: "[t]he phrase 'any scheme or artifice to defraud' means any deliberate plan of action or course of conduct by which someone intends to deceive or cheat another, or by which some-one intends to deprive another of something of value." Petition, Dkt. No. 209,

8

at 13 (emphasis in original). However, Mr. Puerta has not submitted the jury instructions given at his trial. As the court has previously written:

> [I]t is presumed that the underlying proceedings in [defendant's] case were correct. See Morgan, 346 U.S. at 512. The burden is on [defendant]to prove that they were not. Id. [Defendant]has not provided the instructions to the jury in his 1993 trial. The instructions are also not immediately available to the court. However, in denying [defendant's] appeal, the First Circuit wrote that "[c]onsistent with the statutory language, the district judge told the jury that it could convict on count I if it found either a scheme to defraud or a scheme to obtain property by means of false or fraudulent representations." See Puerta, 38 F.3d at 39.

Puerta, 2019 WL 11639554, at *4 (emphasis in original).

In any event, based on the evidence presented at his trial, Mr. Puerta employed a scheme to defraud that was intended to both "deceive the bank and [to] deprive it of something of value." Thus, whether the instruction was disjunctive or conjunctive, any error would have been harmless in this case. Indeed, on remand in Shaw, the Ninth Circuit held that any error resulting from the instructions was harmless and reaffirmed the underlying conviction. United States v. Shaw, 885 F.3d 1217, 1219 (9th Cir. 2018) ("Shaw II"). On this record, therefore, Mr. Puerta cannot, based on Shaw, establish any fundamental error that warrants the extraordinary remedy of granting a writ of coram nobis.

9

Mr. Puerta next contends that his conviction constitutes fundamental error because his submission of a fraudulent deposit slip, rather than a fraudulent check, could not satisfy the "proximate cause" requirement under the First Circuit's decision in Berroa. Id. at 10-11 (citing Berroa, 856 F.3d at 149 & n.4). This contention misrepresents Berroa.

In Berroa, the First Circuit discussed the Supreme Court's interpretation in Loughrin of the phrase "by means of" in §1344(2). See Berroa 856 F.3d at 154 ("'by means of' is 'best read' to include only those frauds in which the false statement will reach a bank, either directly or indirectly") (quoting Loughrin, 134 S. Ct. at 2394 n.8). The issue in Berroa was whether the defendants, who obtained fraudulent medical licenses, "'naturally induc[ed]' healthcare consumers to part with their money years later" through the illegal practice of medicine. Id. at 149-50 (quoting Loughrin, 134 S. Ct. at 2393). The First Circuit found the statutory "by means of" language to be akin to "proximate causation." Berroa, 856 F.3d at 149 n.4. Ultimately, the First Circuit held the act of obtaining fraudulent medical licenses was too attenuated from the government's theory of harm to sufficiently establish the requisite proximate cause. Id.

Here, in contrast, Mr. Puerta's submission of a deposit slip to the Bank of Boston that indicated falsely that the Banco Central check was for $365,000, while—as the jury found—he knew it was not,

10

was the proximate cause of the Bank of Boston being unlawfully dispossessed of that amount. See Puerta, 38 F.3d at 39-40, 42.

Mr. Puerta's current contention raises essentially the same challenge under the Supreme Court's decision in Loughlin that this court rejected in its September 10, 2019 Memorandum and Order:

> The scheme of which Mr. Puerta was convicted is the type of scheme the Supreme Court in Loughrin stated was "clearly" "by means of" a false statement. See [134 S. Ct. at 2393]. The Supreme Court explained that the "by means of" language in §1344(2) "is satisfied when . . . the defendant's false statement is the mechanism naturally inducing a bank . . . to part with the money in its control," which "occurs, most clearly, when a defendant makes a representation to the bank itself—say, when he attempts to cash, at the teller's window, a forged or altered check." See id. Here, [Mr. Puerta's] misrepresentations constituted the "mechanism" that "naturally indue[ed]" the Bank of Boston to part with its money. Id. In particular, by writing on the deposit slip submitted to the Bank of Boston that the Banco Central check was for $365,000, while—as the jury found—knowing it was not, Mr. Puerta induced the Bank of Boston to be unlawfully dispossessed of that amount. See Puerta, 38 F.3d at 39-40, 42. When Mr. Puerta knowingly submitted deposit slips for the incorrect amount, he, in essence, "attempt[ed] to cash . . . a forged or altered check" -- a "clear" case where the "means" requirement is satisfied. Loughrin, [134 S. Ct. at 2393].

Puerta, 2019 WL 11639554, at *5.

For the reasons stated in the government's opposition as amplified in this Memorandum and Order, Mr. Puerta has not established that he is entitled to the extraordinary remedy of a writ of error coram nobis.

11

IV.  ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Mr. Puerta's renewed request for appointment of counsel and his request for additional briefing (Dkt. No. 216) are DENIED.

2. Mr. Puerta's Petition (Dkt. No. 209) is DENIED.

                                                        UNITED STATES DISTRICT JUDGE

12